No. 85,095

WALTER MATJASICH, and CARY HANSON, Individually, *Appellants*, v. STATE OF KANSAS DEPARTMENT OF HUMAN RESOURCES, *Appellee*.

(21 P.3d 985)

Opinion filed April 20, 2001.

*James M. Crowl*, of Dickson & Pope, P.A., of Topeka, argued the cause and was on the briefs for appellant.

*Heather Wilke*, of Kansas Department of Human Resources, argued the cause, and *Claude Lee*, of the same agency, was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The Kansas Department of Human Resources (KDHR) found that under the Kansas statutes, members of a foreign limited liability company doing business in Kansas are personally and individually liable for unpaid wages. The members appealed. The district court determined that pursuant to Kansas statutes, the liability of members of a foreign limited liability company is governed by the laws of that foreign state. It concluded that under the foreign state's law and under Kansas law, the members of the limited liability company were personally required to pay wages due. The district court affirmed the KDHR order. The members appealed, claiming that under K.S.A. 17-7603(b), a foreign limited liability company cannot be construed as a corporation, and, as a Kansas employer, its members are not personally liable for nonpayment of wages.

### Kansas Wage Payment Law and Limited Liability Company Enabling Statutes

In 1973, the Kansas Legislature repealed the prior payment and compensation laws and enacted the Kansas Wage Payment Law. Since 1973, with certain modifications which are not applicable to this case, the Kansas Wage Payment Law has defined "employer" as:

"[a]ny individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, the state of Kansas or any department, agency or authority of the state, any city, county, school district or other political

subdivision, municipality or public corporation and any instrumentality thereof, employing any person." K.S.A. 44-313.

In 1990, the Kansas Legislature created the Kansas Limited Liability Company Act, K.S.A. 17-7601 *et seq*. The legislature did not amend the Kansas Wage Payment Law's definition of an employer to include a limited liability company. The 1999 Kansas Legislature repealed the Kansas Limited Liability Company Act and adopted the Kansas Revised Limited Liability Company Act, K.S.A. 2000 Supp. 17-7662 *et seq*. Again, the legislature did not amend the definition of an employer in the wage payment law to include a limited liability company. In our analysis, we reference the Kansas Limited Liability Act which was in effect at the time of the hearing officer's order finding members of a limited liability company responsible for unpaid wages under K.S.A. 44-323(b).

### Limited Liability Company

Our analysis begins with an examination of Kansas limited liability laws. Kansas statutes governing Kansas limited liability companies provide that a limited liability company shall be a separate legal entity that may conduct or promote any lawful business or purpose which a partnership or individual may conduct but shall not be construed as a corporation. K.S.A. 17-7603. Neither the members nor the managers of a limited liability company are liable for the debts, obligations, or liability of the limited liability company. K.S.A. 17-7620. A member or manager of a Kansas limited liability company is not a proper party to proceedings by or against a limited liability company, except when the object is to enforce a member's or manager's right against, or liability to, the limited liability company. K.S.A. 17-7631. However, where a limited liability company is organized under the laws of another jurisdiction, K.S.A. 17-7636 provides: "The laws of the state, territory, possession, county or other jurisdiction, under which a foreign limited liability company is organized, govern its organization and internal affairs and the liability of its members."

Walter Matjasich and Cary Hanson (Matjasich) organized a limited liability company, Capital Care, LLC (Capital Care), under the laws of the State of Utah. Capital Care operated and Matjasich

managed Heartland Care Center (Heartland) in Topeka, Kansas. LTC Properties, Inc. (LTC) held the mortgage on the Heartland facilities. Heartland began to fail. In the fall of 1998, to protect its investment, LTC temporarily assumed Heartland's payroll on a month-to-month basis. On March 10, 1999, LTC discontinued the payroll payments. To facilitate the placement of Heartland residents in other facilities, Matjasich continued to provide care to residents for an additional 5 days. The Heartland employees who provided care to the residents were not paid wages.

After Heartland closed, the employees filed claims with KDHR for unpaid wages. Matjasich stipulated that Heartland employees were not paid wages for the days Heartland was winding down its operations and closing the nursing home. Matjasich admitted that the limited liability company, Capital Care, was responsible for the unpaid wages and argued that under the Kansas wage law, as a member of a limited liability corporation, he is not personally liable for the wages.

In the initial order, the hearing officer determined that Matjasich should be held personally liable for wages because: (1) the ultimate responsibility to pay wages rested on Capital Care, and Matjasich allowed the employees to work; (2) Matjasich knew the employees would not be paid; (3) Matjasich was aware of the potential payroll problems prior to the payday the employees were not paid; and (4) the payroll checks were signed by Matjasich.

The KDHR hearing officer then noted that pursuant to K.S.A. 44-323(b), a corporate officer or any other agent having management of a *corporation* who knowingly permits the corporation to violate the wage payment law, is personally liable for wages, interest, and penalty as an individual together with the corporation. The hearing officer concluded that although Capital Care was a limited liability company and not a corporation,

"[i]ndividual[s] or partners who own (d.b.a.) a company are responsible for the wages owed by that company. The Kansas Wage Payment Law also, pursuant to K.S.A. 44-323(b), includes individuals who are officers or agents of a corporation as potentially liable for wages. Although the Respondent is by title a Limited Liability Company it is the opinion of this Presiding Officer that the Kansas Wage Payment Law is applicable to men and/or women who run a LLC."

After the Secretary of Human Resources declined to review the order, the hearing officer's initial order became the department's final order. Matjasich appealed to the district court pursuant to K.S.A. 44-322a(c) and K.S.A. 77-601 *et seq.*, claiming that members of a limited liability company cannot be held liable for unpaid wages, based on a statute governing the responsibility of an officer or agent of a corporation.

After reviewing the statutes, the district judge concluded that because Capital Care was a foreign limited liability company organized in the state of Utah, Utah's wage payment law governed the liability of its members. The judge noted that Utah's wage payment law requires employers to make timely and regular payment of wages to their employees and creates a special protection to wage earners by defining "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this state, and *any agent or officer of any of the above-mentioned classes.*" (Emphasis added.) Utah Code Ann. §§ 34-28-2; 34-28-3 (1997). The judge then noted that "person" was defined in Utah statutes to include a limited liability company. See Utah Code Ann. § 48-2b-102 (1998). The district judge concluded that under Utah law or under Kansas law, the members of a limited liability company are not shielded from liability for the company's failure to pay wages. Matjasich appealed.

Matjasich asserts to this court that because Capital Care was a Kansas employer, Kansas, not Utah, wage payment laws apply. We note that the interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. *In re Appeal of United Teleservices, Inc.*, 267 Kan. 570, 572, 983 P.2d 250 (1999).

Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a

question of law over which an appellate court's review is unlimited. 267 Kan. at 572.

Since its enactment, K.S.A. 44-313 of the Kansas wage payment law has never defined "employer" to include a limited liability company or its members or managers. Although K.S.A. 44-323(b), in conjunction with K.S.A. 44-314, provides that where a *corporate* employer knowingly permits the corporation to fail to pay wages, either the corporation or any officer of the corporation or any agent having the management of the corporation shall be deemed the employer for purpose of wage payments, K.S.A. 17-7603(b) prohibits a limited liability company from being construed as a corporation.

When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling. *State v. Fritz*, 261 Kan. 294, Syl. ¶ 1, 933 P.2d 126 (1997). See *State v. Riles*, 24 Kan. App. 2d 827, 956 P.2d 1346, *rev. denied* 264 Kan. 824 (1998). Under the Kansas Wage Payment Law, Matjasich is not personally liable, because the legislature has protected limited liability company members from personal liability, generally, and has specifically stated that a limited liability company cannot be construed as a corporation for purposes of wage payment liability.

## Utah Wage Law

If Utah's wage payment law governs Matjasich's liability, Matjasich is personally liable for the unpaid wages of Capital Care's employees. Matjasich argues that it is contrary to logic to conclude that a foreign limited liability company operating in Kansas is liable in situations where a Kansas limited liability company is not subject to liability.

We note that this court is not unaccustomed to applying the law of foreign jurisdictions where, pursuant to contractual provisions or statute, foreign law applies. See, *e.g.*, *Safeco Ins. Co. of America v. Allen*, 262 Kan. 811, 941 P.2d 1365 (1997). K.S.A. 17-7636 clearly states the laws of the state, territory, possession, county, or other jurisdiction under which a foreign limited liability company

is organized govern its organization and internal affairs and the liability of its members.

Next, Matjasich argues that the provision in K.S.A. 17-7636 requiring Kansas courts to apply the foreign jurisdiction's laws to determine the liability of its members refers to the foreign state's limited liability company enabling legislation and not the foreign state's laws outside its enabling legislation.

When a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. *In re Marriage of Killman,* 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *In re Tax Appeal of Alex R. Masson, Inc.,* 21 Kan. App. 2d 863, 868, 909 P.2d 673 (1995).

K.S.A. 17-7636 requires that courts look to the laws of the jurisdiction where a limited liability company is organized to determine the liability of the company's members for unpaid wages. Therefore, the laws of the foreign jurisdiction include not only the foreign jurisdiction's limited liability company enabling laws but also other laws bearing on member liability.

The members of a foreign liability company should not be surprised to find that they are liable in Kansas for the same conduct they are liable for in their state of organization. The district court correctly applied the Utah law in determining that Matjasich was liable for the unpaid wages of Capital Care's Kansas employees.

KDHR's finding that members of a limited liability company are liable for unpaid wages under K.S.A. 44-323 was erroneous and is reversed. The district court's holding that members of a limited liability company are liable under Kansas law is likewise reversed. The district court's holding that Matjasich is liable for unpaid wages under Utah law, applicable to Matjasich pursuant to K.S.A. 17-7636, is affirmed.

Affirmed in part and reversed in part.