Tim Winters, Chairman Information Network of Kansas 632 S.W. Van Buren, Suite 100 Topeka, Kansas 66603
Dear Mr. Winters:
As Chairman of the Board of Directors for the Information Network of Kansas, Inc., you request our opinion regarding whether any member of the Board may designate a representative who will attend Board meetings in the member's stead. You also ask whether such a designated representative may cast votes on matters that are presented to the Board and, if so, whether the authority to vote must be issue specific. In Attorney General Opinion No. 2002-46, we addressed the authority of the Secretary of State and the Board members who represented the associations. This opinion addresses the authority of the cabinet secretaries, President of Kansas, Inc., and the Director of Information Systems and Communications.
The Information Network of Kansas, Inc., (INK) is "a body politic and corporate . . . constituted as a public instrumentality" that exercises "authority and powers . . . deemed and held to be the performance of an essential governmental function."[1] INK is to "[s]erve in an advisory capacity to the secretary of administration, division of information services and communications and other state agencies regarding the provision of state data to the citizens and businesses of Kansas"[2] and to "develop charges for the services provided to subscribers, which include the actual costs of providing such services."[3] INK is a public corporation.[4]
"INK shall be governed by a board consisting of 
members as follows:
"(1) The president of Kansas, Inc.;
. . . .
"(3) two members who are chief executive officers of agencies of the executive branch, appointed by the governor. . .; [and]
. . . .
"(7) the director of information systems and communications who shall serve as a nonvoting member."[5]
Whether these members of the Board of INK may delegate statutory functions depends on the nature of the duty to be performed. "The general rule is that official duties of a ministerial character may be delegated to another, but those requiring the exercise of judgment and discretion cannot, unless specific statutory authority to do so is given."[6]
"Classifying a person's acts as discretionary or ministerial is often difficult and the decision whether acts of a public official are ministerial or discretionary is determined by the facts of the particular case.
"Where the law prescribes and defines an official's duty with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the performance of that duty is a ministerial act. Official duty is ministerial when it is absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts; that a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in its nature. Where the officer or official body has no judicial power or discretion as to the interpretation of the law, and the course to be pursued is fixed by law, their acts are ministerial only. In this regard, a ministerial act has been defined as one which a person performs on a given statement of facts, and in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his or her own judgment upon the propriety of acts being done.
"Where the act to be done involves the exercise of discretion or judgment, performance of that duty is not merely ministerial. Discretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. When a law does not specify the precise action an official must take, that official retains discretionary authority. Also, it has been said that when the law commits to any officer the duty of looking into facts and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is quasi-judicial."[7]
INK serves in an advisory capacity to the Secretary of Administration, Division of Information Services and Communications, and other State agencies regarding the manner in which data is provided to the public, gathers advice from the users of the established system, and determines charges for the services that are provided to subscribers of the system. The Board has been left on its own to determine how these functions should be performed and possesses discretion in determining any charges subscribers may be required to pay. The functions of the Board are largely discretionary and, therefore, may not be delegated absent express or necessarily implied statutory authority. We note that the agencies discussed in this opinion, unlike the Secretary of State discussed in Attorney General Opinion No. 2002-46, are creatures of statute with no constitutional or inherent powers.
In determining whether the cabinet secretaries, President of Kansas, Inc., and the Director of Information Systems and Communications may designate appointees to serve on the Board of INK in their absence, we are mindful of the decision of the Supreme Court of Michigan in DetroitEdison Co. v. Michigan Corp. and Securities Comm'.[8] In that case, a corporation challenged the authority of the Corporation Tax Appeal Board.[9] Pursuant to the law in Michigan, the Board was to be composed of the attorney general, the state treasurer, and the auditor general.[10] At the time of the corporation's appeal, the Board consisted of the chief assistant attorney general, the deputy state treasurer, and the deputy auditor general.[11]
The Court acknowledged that "judicial or quasi-judicial duties relating to the computation of a tax cannot be delegated in the absence of express statutory authorization to so delegate. . . ."[12] It appears that the legislative act providing for the Corporation Tax Appeal Board was silent regarding the authority of the statutory members to designate appointees to serve in their absence. Other statutory provisions, however, granted the three officers the authority to appoint deputies. The attorney general had the authority to appoint a deputy attorney general who "may . . . serve in place of the Attorney General as a member of the Michigan Securities Commission . . . and other boards and commissions of which the Attorney General now is or may hereafter be an ex-officio member."[13]
"In addition to a deputy provided by law, the attorney general may appoint such assistant attorneys general as he may deem necessary, and who when appointed to such office shall take and subscribe the constitutional oath of office. Any such assistant attorney general may, when designated thereto by his principal, serve in the place of the attorney general as a member of the public debt commission . . . and any other board or commission of which the attorney general is now or may hereafter be an ex officio member . . . with the same powers and duties and in like cases as the attorney general."[14]
The Court determined that "[t]he legislature clearly provided that the attorney general had the privilege and power to designate his deputy or assistant to represent him on the board."[15]
In reviewing the authority of the state treasurer and the auditor general to designate appointees who may serve on the Corporation Tax Appeal Board, the Court reviewed the language in statutes conferring upon the state treasurer and the auditor general the authority to appoint deputies.
"The treasurer may appoint a deputy, for whose acts he shall be responsible, and may revoke such appointment at pleasure; and such deputy may execute the duties of the office during the sickness or necessary absence of the treasurer. . . ."[16]
"The auditor general may appoint a deputy, for whose acts he shall be responsible, and may revoke such appointment at pleasure; and such deputy may execute the duties of the office during the sickness or necessary absence of the auditor general. . . ."[17]
The Court distinguished the authority conferred under these provisions from the authority conferred upon the attorney general, determining that while state statutes expressly authorized the attorney general to designate a deputy or assistant who would represent him on a board on which the attorney general was an ex officio member, the statutes quoted above "did not grant a similar right to the State treasurer or to the auditor general."[18] Rather, the treasurer and auditor general were granted only the authority to appoint an employee. Absent the express language that was included in the statute establishing the authority of the attorney general to appoint a deputy and assistants and to have them serve in place of the attorney general on boards in which the attorney general was an ex officio member, the Court concluded "that it is the legislative wish and mandate that the State treasurer and the auditor general personally act as members of the Corporation Tax Appeal Board."[19]
In a dissenting opinion, two justices stated that the fact the Corporation Tax Appeal Board "performs quasi-judicial functions is not determinative of the question as to whether or not a deputy may properly sit thereon."[20] The justices noted that the Board had long regarded serving on the Board as "one of the `duties of the office' within the meaning of the statutory provisions" that established the authority of the state treasurer and the auditor general to appoint deputies.[21]
The administrative interpretation of the statutes, therefore, recognized the authority of the officers to designate appointees to serve on the Board.[22] They further noted that the State treasurer was ex officio member on 14 other boards and commissions while the auditor general was ex officio member on 7 other boards and commissions.[23] "Such a multiplicity of assignments suggests that the legislature could not reasonably expect them to be performed by 1 [sic] person."[24] The dissenting justices believed that the Corporation Tax Appeal Board was properly constituted.[25] Because the arguments of the dissenting justices do have some merit, we apply those arguments in determining the authority of the members of INK to designate appointees to serve in their absence.
 CABINET SECRETARIES
Exercising the authority granted under subsection (b)(3) of K.S.A.74-9303, the Governor has appointed the Secretary of Transportation and the Secretary of Revenue as members of the Board of Directors of INK.
 Secretary of Transportation
The Governor is authorized to appoint the Secretary of Transportation who is responsible for the direction and supervision of the Kansas Department of Transportation.[26] The Secretary of Transportation is authorized to appoint a state transportation engineer[27] and the directors of transportation administration,[28] transportation operations,[29] engineering and design,[30] planning and development,[31] and aviation.[32]
"The secretary of transportation may organize the department of transportation in the manner he or she deems most efficient, so long as the same is not in conflict with the provisions of this act or other provisions of law, and he or she may adopt rules or regulations governing the transaction of all business of the department and governing the administration of each of the divisions within the department. The chief administrative officer of each division shall perform such duties and exercise such powers as the secretary of transportation may prescribe and such duties and powers as are prescribed by law. Such chief administrativeofficers shall act for and exercise the powers of thesecretary of transportation to the extent authority todo so is delegated by the secretary of transportation."[33]
In addition, "[t]he secretary of transportation also may appoint such other staff assistants and employees as are necessary to enable the secretary to carry out the duties of his or her office. . . . Such . . . staff assistants and employees shall act for and exercise the powers of the secretary of transportation to the extent authority to do so isdelegated by the secretary of transportation."[34]
These statutory provisions clearly authorize the chief administrative officers, staff assistants, and employees to act for and exercise certain powers of the Secretary of Transportation. The ability of the officer, assistant, or employee to act for and exercise the powers of the Secretary of Transportation is subject to the extent outlined by the Secretary's delegation. Therefore, the Secretary of Transportation may delegate to a chief administrative officer, staff assistant, or employee the duty to attend meetings of the Board of Directors of INK. The authority of the chief administrative officer, staff assistant, or employee to vote is dependent on the extent of authority delegated by the Secretary of Transportation.
 Secretary of Revenue
The Department of Revenue is administered under the direction and supervision of the Secretary of Revenue who is appointed by the Governor.[35] The Secretary of Revenue is authorized to appoint the directors of taxation,[36] property valuation,[37] vehicles,[38]
and alcoholic beverage control,[39] the manager of revenue analysis,[40] and attorneys for the Department of Revenue and designated divisions and officers of the department.[41]
"The secretary of revenue may organize the department of revenue in the manner he or she deems most efficient, so long as the same is not in conflict with law. Division heads shall perform such duties and exercise such powers as the secretary of revenue may prescribe and such duties and powers as are prescribed by law. Divisionheads shall act for, and exercise the powers of, thesecretary of revenue to the extent authority to do so isdelegated by the secretary of revenue to the divisionhead."[42]
The language in these provisions mirrors the language in K.S.A. 75-5015. The Legislature clearly authorizes the Secretary of Revenue to delegate to division heads any duties and powers conferred upon the Secretary of Revenue. The authority of the division heads to exercise such duties and powers is subject only to any limitations imposed by the Secretary of Revenue. Therefore, the authority of the division heads to vote at INK Board meetings is dependent on the extent of authority delegated by the Secretary of Revenue.
 PRESIDENT OF KANSAS, INC.
"Kansas, Inc. is a public-private partnership"[43]
established for the purposes outlined in K.S.A. 2001 Supp. 74-8002. Kansas, Inc. is authorized to "hire a person to serve as chief executive officer and president of Kansas, Inc."[44] Such person is to "direct and supervise the general management of the corporation and a small core staff of analysts."[45] The President of Kansas, Inc. "[m]ay employ and terminate such other employees as designated by the members of Kansas, Inc."[46]
The fact that the Legislature grants a governmental entity "authority to employ agents, statisticians, experts, attorneys, and other assistants and employees as may be necessary to perform its duties does not give the [governmental entity] authority directly or by implication [authority] to deputize [sic] those matters which are quasi judicial in character. . . . If . . . the [governmental entity] is given authority by the Legislature to deputize [sic] quasi judicial matters to others, it may do so."[47] The authority of the President of Kansas, Inc. to employ and terminate employees as designated by the members of Kansas, Inc. does not by itself confer authority upon the President to delegate the duties of the President. We have been unable to locate any other statute that authorizes the President of Kansas, Inc. to delegate the President's duties.
Applying the arguments asserted by the dissenting justices in DetroitEdison Co.[48] also fails to indicate any authority of the President of Kansas, Inc. to delegate the duty of attending meetings of the Board for INK. While deference is given to the interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute, particularly when the agency is one of special competence and experience, the agency's interpretation is persuasive rather than binding on the court.[49] The statutes applicable to the Secretary of State, Secretary of Transportation, and Secretary of Revenue expressly provide for the appointment of officers and employees who may perform the duties of the Secretaries. There is no similar language in K.S.A. 2001 Supp.74-8005. The interpretation of K.S.A. 2001 Supp. 74-8005 by the Board exceeds any authority conferred upon the President of Kansas, Inc.
Further, the officers in Detroit Edison Co. were required by state statutes to serve on several boards and commissions. The President of Kansas, Inc. is an ex officio member of only three boards or commissions: the Community Strategic Planning Grant Committee,[50] the review panel for the Kansas Economic Opportunity Initiatives Fund,[51]
and the Board of INK. The review panel for the Kansas Economic Opportunity Initiatives Fund meets annually.[52] It is not our intention to establish a particular number of boards or commissions upon which an officer may be required to serve before an officer may be deemed to have authority to delegate such duties. We do believe, however, that assignment to three boards, one of which meets annually, does not meet the "multiplicity of assignments"[53] that the dissenting justices inDetroit Edison Co. believed suggested an inference by the Legislature that the duties could be delegated. The President of Kansas, Inc. does not have the authority to appoint a person to serve on the Board of INK in the President's absence.
 DIRECTOR OF INFORMATION SYSTEMS AND COMMUNICATIONS
There is within the Department of Administration a Division of Information Systems and Communications.[54] The Director of Information Systems and Communications is appointed by the Secretary of Administration[55] to head the Division.[56] The Director is authorized to appoint, subject to approval by the Secretary of Administration, a deputy director of information systems and a deputy director of telecommunications.[57] The deputy directors "shall have such powers, duties and functions as are prescribed by the director of information systems and communications."[58]
The statutory provision that authorizes the Director of Information Systems and Communications to prescribe the duties of deputy directors is similar to provisions applicable to the Secretary of Transportation and the Secretary of Revenue. The authority of the Director, however, ends with prescribing the duties of the deputy directors. Unlike K.S.A. 75-5015
and 75-5127, K.S.A. 75-4701 does not include a provision that expressly authorizes the Director to delegate the Director's duties to the deputy directors. The statute also lacks a provision similar to one set forth in K.S.A. 75-412 that expressly authorizes the assistant and deputy assistant secretaries of state to perform the duties devolved by law upon the Secretary of State. The Director of Information Systems and Communications does not have express statutory authority to appoint a person to serve on the Board of INK in the Director's absence.
Applying the arguments of the dissenting justices in Detroit EdisonCo. does not provide an inference of authority to appoint a person to serve on the Board of INK in the Director's absence. As occurs in the Board's interpretation of the authority of the President of Kansas, Inc., the Board through its interpretation of K.S.A. 75-4701 extends to the Director authority that does not exist in the statute. Also, as far as we have been able to determine, the Director is statutorily designated as an ex officio member of only two boards: the Board of INK and the Telecommunications Negotiating Committee.[59] The Director is given authority under K.S.A. 75-4713 to appoint another person to the Telecommunications Negotiating Committee.[60] The Director is not, by statute at least, faced with the "multiplicity of assignments" addressed by the dissenting justices in Detroit Edison Co. The Director of Information Systems and Communications is not authorized to appoint a person to serve on the Board of INK in the Director's absence.
In review, the Secretary of Transportation may delegate to a chief administrative officer, staff assistant, or employee the duty of attending meetings of the Board of Directors for the INK. The authority of the chief administrative officer, staff assistant, or employee to vote on matters before the Board is dependent on the extent of authority delegated by the Secretary of Transportation. The Secretary of Revenue is authorized to delegate to division heads any duties and powers conferred upon the Secretary of Revenue. The authority of the division heads to exercise such duties and powers is subject only to any limitations imposed by the Secretary of Revenue. Therefore, the Secretary of Revenue may delegate to division heads the duty of attending meetings of the Board of INK and the authority of the division heads to vote is dependent on the extent of authority delegated by the Secretary of Revenue. Neither the President of Kansas, Inc. nor the Director of Information Systems and Communications has the authority to appoint a person to serve on the Board of INK in the President's or Director's absence.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] K.S.A. 74-9303(a).
[2] K.S.A. 74-9304(a)(1).
[3] K.S.A. 74-9304(a)(3).
[4] Attorney General Opinion No. 2002-46.
[5] K.S.A. 74-9303(b).
[6] Coffman v. Fisher, 203 Kan. 618, 624 (1969), quoting Moore v.Wilson, 84 Kan. 745, 747 (1911).
[7] 63C Am.Jur.2d Public Officers and Employees § 234 (1997).
[8] 105 N.W.2d 110 (Mich. 1960).
[9] The Corporation Tax Appeal Board performed a judicial or quasi-judicial function rather than a pure executive function. The case, however, provides guidance in determining whether members of the Board of INK may delegate their duty to attend Board meetings.
[10] Detroit Edison Co. v. Michigan Corp. and Securities Comm'n,105 N.W.2d 110, 111 (Mich. 1960).
[11] Id. at 110.
[12] Id. at 111.
[13] Id. at 112, quoting P.A. 1917, No. 153.
[14] Id., quoting C.L.S. 1956, § 14.35 (Stat. Ann. 1952 Rev. § 3.188).
[15] Id. at 113.
[16] Id. at 112, quoting Rev. Stat. 1846, § 9.
[17] Id., quoting Rev. Stat. 1846, § 26.
[18] Id. at 113.
[19] Id.
[20] Id. at 114-15.
[21] Id. at 114.
[22] Id.
[23] Id.
[24] Id.
[25] Id. at 115.
[26] K.S.A. 2001 Supp. 75-5001(a).
[27] K.S.A. 75-5005.
[28] K.S.A. 75-5006.
[29] K.S.A. 75-5007.
[30] K.S.A. 75-5008.
[31] K.S.A. 75-5009.
[32] K.S.A. 75-5010.
[33] K.S.A. 75-5015(a) (emphasis added).
[34] K.S.A. 75-5005 (emphasis added).
[35] K.S.A. 2001 Supp. 75-5101.
[36] K.S.A. 75-5102.
[37] K.S.A. 75-5105.
[38] K.S.A. 75-5110.
[39] K.S.A. 75-5117.
[40] K.S.A. 75-5134.
[41] K.S.A. 75-5121.
[42] K.S.A. 75-5127 (emphasis added). See also K.S.A. 75-5134 ("[t]he manager of revenue analysis shall exercise the powers and perform the duties and functions assigned or delegated by the secretary of revenue or prescribed by law").
[43] K.S.A. 2001 Supp. 74-8009a(a).
[44] K.S.A. 2001 Supp. 74-8005(a).
[45] K.S.A. 2001 Supp. 74-8005(b).
[46] K.S.A. 2001 Supp. 74-8005(b)(1).
[47] State Tax Comm' of Utah v. Katsis, 62 P.2d 120, 122 (Ut. 1936). As was previously noted, INK does not perform judicial or quasi-judicial functions. Cases regarding such functions, however, provide guidance in determining the authority of the members of INK to delegate their executive function.
[48] 105 N.W.2d 110 (Mich. 1960).
[49] CPI Qualified Plan Consultants, Inc., Delaware, v. Kansas Dept. ofHuman Resources, No. 86,799 (Kan. January 25, 2002); Matjasich v. KansasDept. of Human Resources, 271 Kan. 246, 250-51 (2001).
[50] K.S.A. 2001 Supp. 74-5095.
[51] K.S.A. 2001 Supp. 74-50,151, as amended by L. 151, § 5.
[52] K.S.A. 2001 Supp. 74-5095.
[53] Detroit Edison Co., 105 N.W.2d at 114.
[54] K.S.A. 75-4701(a).
[55] K.S.A. 75-4701(b).
[56] K.S.A. 75-4701(a).
[57] K.S.A. 75-4701(c).
[58] Id.
[59] K.S.A. 75-4713(a)(3).
[60] Id.