No. 89,715

JOAN COLE, *Appellant,* v. CARLOS MAYANS and WINSTON
KENTON, *Appellees.*

(80 P.3d 384)

Opinion filed December 12, 2003.

*Kelly W. Johnston*, of The Johnston Law Offices, P.A., of Wichita, argued the cause and was on the briefs for appellant.

*Richard A. Olmstead*, of Husch & Eppenberger, LLC, of Wichita, argued the cause, and *Alan L. Rupe*, of the same firm, and *Richard A. Macias*, of Wichita, were with him on the briefs for appellees.

*Vera May Gannaway*, general counsel, was on the brief for *amicus curiae* Kansas Governmental Ethics Commission.

The opinion of the court was delivered by

GERNON, J.: This appeal requires us to interpret the Kansas Campaign Finance Act, K.S.A. 25-4142 *et seq.*, and decide whether the Act controls over local ordinances designed to limit campaign contributions and whether the transfer of campaign funds from one office to another office is permissible.

We granted a petition for review from an unpublished decision of the Court of Appeals filed January 31, 2003, which held that Carlos Mayans could transfer funds from his legislative campaign committee to the campaign committee for his candidacy for the office of mayor of the City of Wichita. Mayans, a state legislator since 1992, had accumulated campaign contributions in excess of $50,000 in his legislative campaign account. In 2002, he declined to run for reelection to his state legislative office and chose to run in the Wichita mayoral race. The Court of Appeals ruled, however, that any such transfer was limited to $500, in accordance with Wichita campaign finance ordinances. See Wichita City Code 2.56.010 and 2.56.030 (2001).

In addition to the briefs of the parties, the Kansas Governmental Ethics Commission filed an *amicus curiae* brief.

Prior to depositing the money from his legislative campaign account into his mayoral campaign account, Mayans sought approval for the transaction from the Governmental Ethics Commission (Commission). The Commission advised Mayans that the Kansas Campaign Finance Act did not prohibit the use of his legislative campaign funds in his mayoral campaign but noted that it did not have jurisdiction over Wichita campaign ordinances.

Mayans sought approval from the City of Wichita. The Wichita city attorney advised Mayans that the Wichita campaign finance ordinances did not prohibit the use of legislative campaign funds

in a local election. It is the approval of the transfer of these funds which is the focus of our attention here.

Joan Cole, also a candidate for mayor of Wichita, filed a petition in the Sedgwick County District Court seeking a temporary and permanent injunction, alleging that Mayans' contribution from his legislative campaign account violated Wichita campaign finance ordinances. On the same day, the district court issued an ex parte temporary injunction, prohibiting Mayans from using his legislative campaign funds in his Wichita mayoral campaign.

Mayans filed a motion to dismiss Cole's petition. Following a hearing, the district court granted Mayans' motion to dismiss, and Cole appealed to the Court of Appeals.

After receiving the Court of Appeals' decision, Mayans requested another ruling from the Commission regarding whether his mayoral campaign was a bona fide successor candidacy and whether the transfer from his legislative campaign account to his mayoral campaign account was a contribution. The Commission advised Mayans that his mayoral campaign was a bona fide successor candidacy and his transfer of funds was not a contribution under the Campaign Finance Act.

Whatever Mayans sought to do after the Court of Appeals decision is not relevant to this appeal. In addition, whatever ruling the Commission made to the late request by Mayans is not part of the record on appeal.

## EXHAUSTION OF REMEDIES

As a preliminary matter, we must consider Mayans' contention that Cole failed to exhaust her administrative remedies. This issue is a question of law over which we have unlimited review. *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 387, 996 P.2d 821 (2000).

Generally, an agency should be given the first opportunity to exercise its discretion or special expertise. When an administrative remedy is provided by statute, such a remedy must ordinarily be exhausted before a party can bring the matter before the courts. However, if no agency remedy is available or when it is inadequate, exhaustion is not required. 268 Kan. at 389.

Mayans argues that Cole lacked standing to bring an action in the district court. Mayans relies on the provisions in the Campaign Finance Act that require individuals to file complaints with the Commission but authorize the Commission to bring an action in court. See K.S.A. 25-4160; K.S.A. 25-4183.

Cole, on the other hand, argues that Mayans should not be allowed to raise a new defense on appeal. Her argument, however, ignores the necessity of jurisdiction which no court would have if administrative remedies are not exhausted. An appellate court has a duty to question jurisdiction on its own initiative. If the record shows a lack of jurisdiction for the appeal, the appeal must be dismissed. *State v. Verge*, 272 Kan. 501, 521, 34 P.3d 449 (2001).

K.S.A. 77-612 requires the exhaustion of administrative remedies before a party can seek review under the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq*. Thus, this court's jurisdiction may be dependant on whether Cole exhausted her administrative remedies.

In her petition, Cole alleges a violation of the Wichita city ordinances, not the Campaign Finance Act. Before the district court, Cole limited her argument to the application of the Wichita campaign finance ordinances. She argued that the ordinances limited campaign contributions to adult human beings and that Mayans' legislative campaign account was not an adult human being.

In the district court, both parties addressed the application of the Wichita ordinances, not the Campaign Finance Act, and both parties referred to the money from Mayans' legislative campaign account as a contribution. Neither party raised the issue of the application of the Campaign Finance Act or the need for Cole to exhaust her administrative remedies. Likewise, the district court did not address the application of the Campaign Finance Act but limited its ruling to an interpretation of the Wichita ordinance.

Like the district court, the Court of Appeals based its decision on an interpretation of Wichita City Ordinance 2.56.030. The posture of this case has shifted from a violation of ordinance 2.56.030, which limits the amount of contributions, to an examination of the Kansas Campaign Finance Act and its related regulations. Mayans argues for the first time in this appeal that the transfer of funds

from his legislative campaign account to his mayoral campaign is not a contribution. Consequently, we will review the issue of whether Cole failed to exhaust her administrative remedies by considering the case as it was originally presented to the district court.

Because the Commission does not have jurisdiction over Wichita ordinances, Cole could not have proceeded by filing a complaint with the Commission. Unlike the Campaign Finance Act, the Wichita ordinances do not specify the procedure to be used when someone believes the ordinances are not being followed. The Wichita campaign finance ordinances neither establish an agency or body to review concerns about the application of the ordinances nor limit who can bring a cause of action. When there is no agency remedy available, exhaustion is not required. *NEA-Coffeyville*, 268 Kan. at 389. Thus, this court's jurisdiction is not dependant on whether Cole exhausted her administrative remedies before filing her cause of action in the district court because she had no administrative remedies available under the Wichita campaign finance ordinances.

Mayans also argues that Cole lacked standing to bring a cause of action under the Wichita ordinances. He claims that the penalty for violating the ordinances is prosecution for a misdemeanor and that the Sedgwick County district attorney or the Wichita city attorney are the only parties who can bring such a cause of action. Mayans cites several cases for the proposition that private citizens cannot sue to protect the interests of the general public. These cases, however, are not on point. Cole brought a cause of action because she was also a candidate in the mayoral race and Mayans' use of campaign funds directly affected her mayoral campaign. She was not bringing a cause of action to protect the general public. Her cause of action was directed at protecting her own interests as a candidate for mayor.

Mayans' argument also fails to recognize the remedy requested by Cole. She sought an injunction to prohibit the use of his legislative campaign funds. She did not seek criminal penalties or fines against Mayans.

K.S.A. 60-901 *et seq.* does not limit who may bring a cause of action for an injunction, and Mayans has failed to direct the court

to any other law limiting Cole's right to petition for an injunction. As a result, his claim that Cole lacked standing to file a petition for an injunction based on the Wichita campaign finance ordinances is without merit.

## CAMPAIGN FINANCE ACT

The Kansas Campaign Finance Act, K.S.A. 25-4142 *et seq.*, is a logical starting point for a discussion of the issues involved in this case. We begin by outlining the relevant sections of that Act.

The following provisions of K.S.A. 2002 Supp. 25-4143 are relevant to our discussion:

"(a) 'Candidate' means an individual who: (1) Appoints a treasurer or a candidate committee;

(2) makes a public announcement of intention to seek nomination or election to state or local office;

(3) makes any expenditure or accepts any contribution for such person's nomination or election to any state or local office; or

(4) files a declaration or petition to become a candidate for state or local office.

"(b) 'Candidate committee' means a committee appointed by a candidate to receive contributions and make expenditures for the candidate.

"(c) 'Clearly identified candidate' means candidate who has been identified by the:

(1) Use of the name of the candidate;

(2) use of a photograph or drawing of the candidate; or

(3) unambiguous reference to the candidate whether or not the name, photograph or drawing of such candidate is used.

. . . .

"(e)(1) 'Contribution' means:

(A) Any advance, conveyance, deposit, distribution, gift, loan or payment of money or any other thing of value given to a candidate, candidate committee, party committee or political committee for the express purpose of nominating, electing or defeating a clearly identified candidate for a state or local office.

(B) Any advance, conveyance, deposit, distribution, gift, loan or payment of money or any other thing of value made to expressly advocate the nomination, election or defeat of a clearly identified candidate for a state or local office;

(C) a transfer of funds between any two or more candidate committees, party committees or political committees.

. . . .

"(g)(1) 'Expenditure' means:

. . . .

(D) a transfer of funds between any two or more candidate committees, party committees or political committees."

## MAYANS' ARGUMENT

Mayans now contends, for the first time, that the transfer of funds from his legislative campaign committee to his mayoral campaign committee was not a contribution. We note that in the district court and in the Court of Appeals, Mayans' position was that this transfer was a contribution. He thus raises a new legal theory for the first time on appeal.

Generally, parties may not raise a new legal theory for the first time on appeal. *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 622, 938 P.2d 1293 (1997). In *Jarboe*, this court recognized three exceptions to the general rule:

" ' "(1) Cases where the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case;

" ' "(2) Questions raised for the first time on appeal if consideration of the same is necessary to serve the ends of justice or to prevent denial of fundamental rights; and

" ' "(3) That a judgment of a trial court may be upheld on appeal even though that court may have relied on the wrong ground or assigned a wrong reason for its decision." [Citation omitted.]' " 262 Kan. at 622-23.

We will review Mayans' claims because consideration of the issue is necessary to serve the ends of justice.

Mayans' contention is, and the Commission agrees, that the Campaign Finance Act and the related Kansas Administrative Regulations do not consider the transfer of funds between different and diverse campaign committees to be a contribution.

Resolution of this issue requires the interpretation of the Campaign Finance Act and the related administrative regulations. Generally, administrative regulations have the force and effect of statutes. *Jones v. The Grain Club*, 227 Kan. 148, 150, 605 P.2d 142 (1980). The interpretation of a statute is a question of law, and this court exercises de novo review. *Matjasich v. Kansas Dept. of Human Resources*, 271 Kan. 246, 250-51, 21 P.3d 985 (2001).

In *Matjasich*, we stated: "Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's

interpretation, while persuasive, is not binding on the court." 271 Kan. at 250.

The fundamental rule for statutory construction is that the intent of the legislature governs if that intent can be determined. The legislature is presumed to have expressed its intent through the language in the statutory scheme. When a statute is plain and unambiguous, the court must give effect to the legislative intent as it was expressed rather than determine what the law should or should not be. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). Courts, however, are not limited to examining the language of the statute alone but may also consider the causes that impel the statute's adoption, the statute's objective, the historical background, and the effect of the statute under various constructions. *Bell v. Simon*, 246 Kan. 473, 476, 790 P.2d 925 (1990). In addition to considering the language and the circumstances surrounding the enactment of the statute, this court must consider the various provisions of an act together with a view of reconciling and harmonizing the provisions if possible. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997). As a general rule, statutes should be interpreted to avoid unreasonable results. *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002).

Mayans contends that K.A.R. 19-22-1 supports his position that the transfer of funds from his legislative campaign account to his mayoral campaign account is not a contribution.

K.A.R. 19-22-1(a) provides in part:

"[T]he carryover of funds or inventory by a candidate, candidate committee, party committee or political committee from one election period to another or the transfer thereof to a *bona fide successor committee or candidacy* does not constitute a contribution." (Emphasis added.)

K.A.R. 19-22-1(b), however, provides:

"Transfer of funds. Except as provided in subsection (a), the transfer of funds between any two (2) or more candidates, candidate committees, party committees or political committees constitutes a contribution made to the recipient."

Our focus is drawn to the phrase "bona fide successor committee or candidacy" in K.A.R. 19-22-1(a). Neither the Campaign Finance

Act nor the regulations define "bona fide successor committee or candidacy."

The Commission has previously interpreted the phrase to include transfers from legislative campaign accounts to local campaign accounts. For the reasons stated below, we disagree with such an interpretation.

Mayans and the Commission argue that the transfer from Mayans' legislative campaign to his mayoral campaign must be a transfer to a bona fide successor candidacy because a contribution is prohibited by K.S.A. 25-4157a(c) ("No candidate or candidate committee shall accept from any other candidate or candidate committee for any candidate for local, state or national office, any moneys received by such candidate or candidate committee as a campaign contribution.").

The Commission further argues that K.S.A. 25-4157a does not specifically render K.A.R. 19-22-1 invalid, so the regulation must be interpreted to permit the transfer Mayans made. The Commission, however, fails to offer any authority for the proposition that a statute must specifically repeal a regulation in order to invalidate the regulation. We are unable to find any authority for that proposition.

In *Kansas Commission on Civil Rights v. City of Topeka Street Department*, 212 Kan. 398, 402, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973), this court noted:

" 'The power to adopt rules and regulations is administrative in nature, not legislative, and to be valid, must be within the authority conferred. An administrative rule and regulation which goes beyond that which the legislature has authorized, which is out of harmony with or violates the statute, or which alters, extends, limits or attempts to breathe life into the source of its legislative power, is said to be void.' " (Quoting *State, ex rel., v. Columbia Pictures Corporation*, 197 Kan. 448, 454, 417 P.2d 255 [1966].)

We note that K.S.A. 25-4157a(c) was added to the Campaign Finance Act in 1991. L. 1991, ch. 150, sec. 12. Prior to the addition of subsection (c), the only direction given to candidates who chose to close out their campaign accounts was that such funds could not be used by the candidate personally. See K.S.A. 25-4157a(a).

The result was that many candidates contributed the money in their campaign accounts to candidates for other public offices. The legislature ended the practice of contributing to other candidates by establishing specific and limited depositories for such residual funds from a terminated campaign account. See K.S.A. 25-4157c(d).

The legislative intent, as determined by a plain reading of the statute, leads us to conclude that K.S.A. 25-4157a does not prohibit the use of campaign accounts for reelection, but it does prohibit the transfer of campaign funds between different candidacies. Thus, the question remains, may those funds be transferred to the same individual who is running for a different office? Mayans and the Commission argue that if the transfer between candidacies is a contribution, then K.S.A. 25-4157a(c) prohibits candidates from using their campaign accounts for reelection.

We conclude that K.S.A. 25-4157a(c) and K.A.R. 19-22-1 may be read together harmoniously to permit the transfer of campaign funds between candidacies when the candidate is running for reelection to the same office. We interpret the phrase "bona fide successor committee or candidacy" in K.A.R. 19-22-1(a) to include an individual who is a candidate for reelection to the same office.

This interpretation of the statute and the regulation comports with public policy and this court's determination that the purpose of the Campaign Finance Act is to protect the public. See *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 51, 11 P.3d 1134 (2000).

This goal is enunciated in K.A.R. 19-20-3, which states that the provisions of the Kansas Administrative Regulations relating to the Campaign Finance Act "shall be liberally construed to accomplish the purposes of the act including the administration of fair and open elections."

Those individuals serving in statewide offices and members of the legislature whose every act has a statewide impact receive contributions from many sources, including individuals, corporations, and special interest groups whose interests and concerns are statewide. Such contributors may not have any interest in local government issues or policies and, currently, are not given the option to

withdraw their contributions for a candidate who may be seeking to transfer such funds to a local office or an office the contributors have no interest in whatsoever.

In addition, a candidate for a statewide office or the legislature will potentially have a large pool of contributors, including special interest groups, corporations, business entities, and political action committees, which may allow that candidate to accumulate a large campaign account. To allow such a candidate to transfer a large sum of money to a local campaign runs contrary to the goal of promoting "fair and open elections" in K.A.R. 19-20-3, and such a transfer potentially would give that candidate a decidedly unfair advantage in a local campaign.

Contributors to Mayans' legislative campaign funds came from many diverse sources, including political action committees and corporations. With contributions from these sources, Mayans accumulated over $50,000 in his legislative campaign account. Other candidates for the Wichita mayoral campaign were prohibited by the Wichita campaign finance ordinances from receiving contributions from any political action committee or corporation, and all contributions were limited to $500. By transferring the funds from his legislative campaign account, Mayans could effectively undermine the Wichita campaign finance ordinances and clearly frustrate the Wichita city ordinances and the Campaign Finance Act's goal of fair and open elections. We conclude that an interpretation of K.A.R. 19-22-1(a) allowing such transfers would place statewide or legislative office candidates in a special category and grant them a privilege that usurps local authority to enact more restrictive campaign finance laws in violation of the home rule provision of the Kansas Constitution. See Kan. Const. Art. 12, § 5(c)(1), which states:

"Any city may by charter ordinance elect in the manner prescribed by this section that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city."

The plain language of 25-4143 also supports the Court of Appeals' conclusion that a transfer from a legislative campaign to a

mayoral campaign is a contribution. K.S.A. 2002 Supp. 25-4143(e)(1)(C) defines "contribution" to specifically include the transfer of funds between candidacies. Likewise, K.S.A. 2002 Supp. 25-4143(e)(2) specifically excludes four items from the definition of "contribution." The transfer of the funds between candidacies is not included in the specific list of excluded items.

When an item is not included in a specific list, this court can presume that the legislature intended to exclude the item by applying the maxim of *expressio unius est exclusio alterius, i.e.,* the inclusion of one thing implies the exclusion of another. *In re Marriage of Killman,* 264 Kan. 33, 42, 955 P.2d 1228 (1998).

We further conclude that the attempted transfer from the Mayans' legislative campaign account to his mayoral campaign account is a contribution and that his mayoral campaign account is not a bona fide successor committee or candidacy. Using the same maxim, *expressio unius est exclusio alterius,* this court concludes that had the legislature intended that such a transfer be allowed, it could have specifically so stated. Absent such specificity, we find nothing in the Campaign Finance Act or in the regulations relating thereto which authorizes such a transfer or contribution under the facts before us.

The Commission opines that the plain language of K.S.A. 2002 Supp. 25-4143(e)(1)(C) defining contribution does not include the transfer between Mayans' legislative campaign account and his mayoral campaign account because the statute specifically states that such transfers must be made between *candidate committees* and Mayans' mayoral campaign account is not a candidate committee.

A "candidate committee," as defined by K.S.A. 2002 Supp. 25-4143(b), is "a committee appointed by a candidate to receive contributions and make expenditures for the candidate." The Commission appears to differentiate between candidacies based on the form of the campaign organization. Under the Commission's interpretation of K.S.A. 2002 Supp. 25-4143(e)(1)(C), Mayans could transfer the money if he used a treasurer rather than a candidate committee to administrate the financial aspects of his campaign. However, according to the Commission, if Mayans had named a

campaign committee rather than a treasurer, he would have been precluded from transferring the funds. K.S.A. 2002 Supp. 25-4143(e)(1)(C) states that a contribution means: "a transfer of funds between any two or more candidate committees, party committees or political committees." Such a position seems to suggest form over substance and begs the question "Treasurer for what?" The obvious answer is treasurer for the candidate or candidate committee seeking election to a different office from the one to which the contributions were originally made. See K.S.A. 2002 Supp. 25-4143(o) (definition of treasurer). The Commission essentially argues a distinction without a difference. This distinction is invalidated by K.S.A. 25-4146(b) which requires all contributions and expenditures to go through a treasurer.

The Commission further asserts in its *amicus* brief that the legislature included the term "candidate" in K.S.A. 2002 Supp. 25-4143(e)(1)(A) and (D), so it must have specifically intended to leave the term "candidate" out of K.S.A. 2002 Supp. 25-4143(e)(1)(C), where it only referred to candidate committees. This argument overlooks the application of other subsections.

K.S.A. 2002 Supp. 25-4143(e)(1)(A) provides that "contribution" means

"[a]ny advance, conveyance, deposit, distribution, gift, loan or payment of money or any other thing of value given to a *candidate*, candidate committee, party committee or political committee for the express purpose of nominating, electing or defeating a clearly identified candidate for a state or local office." (Emphasis added.)

This subsection recognizes that donors may contribute to a candidate personally without giving to the candidate's campaign fund. For example, a donor could offer to pay a candidate's financial obligations while the candidate was campaigning, so the candidate would not have to work during the campaign. Because the language in subsection (e)(1)(A) includes the term "candidate" in the list of recipients, this type of donation would be considered a contribution subject to the statutory limitations placed on contributions. The subsection prevents candidates from personally receiving donations outside the Campaign Finance Act.

K.S.A. 2002 Supp. 25-4143(e)(1)(D) provides that "contribution" means

"the payment, by any person other than a *candidate*, candidate committee, party committee or political committee, of compensation to an individual for the personal services rendered without charge to or for a candidate's campaign or to or for any such committee." (*Emphasis* added.)

By including the term "candidate" in this subsection, the legislature chose to exclude the candidate's personal payments from the definition of "contribution" under subsection (e)(1)(D).

In contrast, K.S.A. 2002 Supp. 25-4143(e)(1)(C) provides that a contribution is "a transfer of funds between any two or more candidate committees, party committees or political committees." The word candidate is not necessary in this subsection because transfers to candidates themselves are prohibited by the Campaign Finance Act. K.S.A. 25-4157a(a) provides that "[n]o moneys received by any candidate or candidate committee of any candidate as a contribution under this act shall be used or be made available for the personal use of the candidate." Thus, transfers must be made to the candidate's campaign treasury, whether that treasury is administered by a one-person treasurer or a committee of more than one person.

Mayans and the Commission also argue that this court should defer to the Commission's previous decisions regarding the transfer of funds from state level campaign accounts to local level campaign accounts because the Commission is an agency of "special competence and experience." In support of this proposition, the Commission cites *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 810, 667 P.2d 306 (1983).

As stated by this court in *Matjasich v. Kansas Dept. of Human Resources*, 271 Kan. 246, 250-51, 21 P.3d 985 (2001):

"[T]he interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. [Citation omitted.]

". . . Interpretation of a statute is a question of law over which an appellate court's review is unlimited. [Citation omitted.]"

As further stated by this court in the *Kansas Bd. of Regents* case cited by the Commission: "If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps; the determination of an administrative body on questions of law is not conclusive, and, while persuasive, is not binding on the courts. [Citations omitted.]" 233 Kan. at 810.

The Commission's interpretation of K.S.A. 2002 Supp. 25-4143(e) unreasonably distinguishes between candidates based upon the organizational structure of the campaign and does not harmonize the various provisions of the Campaign Finance Act and its administrative regulations. In this instance, such an interpretation does not comport with the stated goal of the regulations relating to the Campaign Finance Act of promoting "fair and open elections."

The task of this court is to harmonize the statutes and regulations while avoiding unreasonable results. See *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002); *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997).

We conclude, therefore, that the Commission's interpretation of K.S.A. 2002 Supp. 25-4143(e), which attempted to limit the definition of "contribution" by distinguishing between candidacies based on whether they have a treasurer or a candidate committee controlling the finances, should be rejected.

The Court of Appeals correctly determined that the transfer of funds between Mayans' legislative campaign account to his mayoral account was a contribution. However, the Court of Appeals failed to consider the impact of K.S.A. 25-4157a(c), which specifically prohibits contributions between candidacies. Pursuant to Wichita City Ordinance 2.56.010 (2001), the Campaign Finance Act applies unless the Wichita ordinances are more restrictive. In this case, the Campaign Finance Act is more restrictive. Consequently, the portion of the Court of Appeals' opinion that permits the transfer of $500 to Mayans' mayoral account must be reversed.

We hold that the Campaign Finance Act and the related regulations, when coupled with the purpose for the Campaign Finance Act, must be construed to limit the transfer of campaign contri-

butions from a candidate's campaign account for a specific office to the same candidate's campaign account for election to that same office. Thus, there are only two situations in which the transfer can be made. The first is when an incumbent runs for reelection to the same office. The second is when a candidate loses an election for a specific office but seeks election to the same office in a subsequent election.

The goal of promoting fair and open elections can best be served by a legislative enactment clearly defining a "bona fide successor candidacy." Further, a legislative enactment should require the Commission to promulgate rules and regulations for the orderly return of contributions to donors who have contributed to a candidate for a specific office but do not want to contribute to the same candidate if he or she decides to run for a different office. Such regulations would bring to the election process a sense of fundamental fairness by prohibiting statewide or legislative office candidates from accumulating tens of thousands of dollars and transferring those contributions to a candidacy for a local office. Allowing the transfer of a large war chest of contributions to a local election encourages politicians to "buy" another office. In our view, this type of transfer does not comport with the current statutory language and administrative regulations, nor does it meet the overall goal of fair and open elections.

The decision of the Court of Appeals is affirmed in part and reversed in part. The decision of the district court is reversed.

BEIER, J., not participating.

Wahl, S.J., assigned